PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 09-1170
———

ELIZABETH HARVEY,

Appellant

v.

PLAINS TOWNSHIP POLICE DEPARTMENT;
EDWARD J. WALSH; RONALD DOMBROSKI;
PLAINS TOWNSHIP BOARD; JOAN A. CHUKINAS
———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-01-cv-01768)
District Judge:  Honorable James M. Munley
———

Argued January 5, 2011
Before:  AMBRO and FISHER, *Circuit Judges*,
and SÁNCHEZ,* *District Judge*.

———

* The Honorable Juan R. Sánchez, District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

(Filed: March 28, 2011)

Elizabeth Harvey
Dundee Apartments #10
Middle Road
Wilkes Barre, PA  18702
      *Pro Se Appellant*

Alexander Bilus (Argued)
Stephen J. McConnell
Dechert
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA  19104
      *Court Appointed Amicus Curiae*

C. Kent Price (Argued)
Thomas, Thomas & Hafer
305 North Front Street, 6th Floor
P.O. Box 999
Harrisburg, PA  17101-1233
      *Counsel for Appellee, Ronald Dombroski*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

2

It is our second time hearing this case on appeal. Elizabeth Harvey originally brought a claim under 42 U.S.C. § 1983 against Officer Ronald Dombroski and other defendants for the allegedly unconstitutional search of her apartment in the context of her ex-boyfriend's repossession of property. Officer Dombroski was at the scene of the repossession serving to maintain the peace, and there was a question as to whether he took an active role in the repossession or remained neutral. The District Court initially ruled in favor of all the defendants on summary judgment, and we reversed with respect to Officer Dombroski in holding that there was a material factual dispute as to whether Dombroski acted under color of state law. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185 (3d Cir. 2005) ("*Harvey I*"). On remand, the District Court conducted a jury trial and, at the conclusion of the two-day trial, provided a verdict form that limited the state action issue to a single factual question: whether Dombroski ordered Harvey's door to be opened. The jury found in the negative, and Harvey lost.

We find that the verdict form was in error. Action under color of state law must be addressed after considering the totality of the circumstances and cannot be limited to a single factual question. For the foregoing reasons, we will vacate and remand this case to the District Court for a new trial.

## I.

At one point, Elizabeth Harvey and Edward Olowiany jointly leased an apartment from Joan Chukinas, their landlord. The relationship between Harvey and Olowiany

3

ended, and Harvey received a protection from abuse order ("PFA"), which granted her exclusive possession of the apartment and ordered Olowiany to retrieve all of his belongings immediately after entry of the PFA. Olowiany did just that, but later that month, Olowiany's lawyer mailed Harvey a letter seeking permission to return to retrieve additional items. Harvey ignored the letter. Two weeks later, a second letter was sent. Harvey claims that she was away from her apartment and did not receive the second letter. In the meantime, Olowiany attempted to repossess the additional property and sought police presence to maintain the peace.

Officer Dombroski was dispatched by the Plains Township Police Department and arrived at Harvey's apartment at 2:00 p.m. on a weekday. Olowiany and his friend Tina George arrived five minutes later, as did Chukinas with a key to the apartment. Harvey was not home. They waited for thirty minutes, at which point they began discussing ways to obtain access to Harvey's apartment. Dombroski testified that Chukinas asked him whether it would be permissible to open Harvey's door:

> I said to her, based on what I had known from my supervisor and the letters I had seen [from Olowiany's lawyer] . . . I can't see a problem with it, everyone got the letter and that was it. I never told her to open the door. . . . I told Joan [Chukinas] I could not see a problem with it because I believed everybody got the letter.

(App. at 243.) Chukinas testified that "the policeman okayed me to open the door" (*id*. at 41-42) and that she "would have

4

never opened the door if I didn't have permission from the policeman." (*Id*. at 35-36.) After Chukinas opened Harvey's door, Dombroski and Olowiany entered the apartment. Olowiany left with several items, and Harvey arrived later that day to find her apartment "in shambles." (*Id*. at 123-24.)

Harvey originally brought this action under 42 U.S.C. § 1983 against Officer Dombroski, Police Chief Edward Walsh, the Plains Township Police Department, the Plains Township Board, and Joan Chukinas for the unconstitutional search of her apartment. The District Court for the Middle District of Pennsylvania granted summary judgment in favor of all the defendants. On appeal, we reversed the District Court's grant of summary judgment in favor of Officer Dombroski and remanded the case. *Harvey I*, 421 F.3d at 187.

The District Court held a jury trial. At the conclusion of the trial, the Court instructed the jurors as to Harvey's § 1983 claim. It instructed that action under color of state law means "that the plaintiff must show that the defendant was using power that he possessed by virtue of state law." (App. at 302.) The Court went on to note that, "in order to determine if the . . . plaintiff established her Section 1983 claim, you must answer only one factual question, and that is did the defendant order the landlady to open the door to the apartment." (*Id*.) The District Court also provided a verdict form with the first question reading as follows:

> 1) Did Defendant Ronald Dombroski act under color of state law with regard to the re-possession of personal property at Plaintiff

Elizabeth Harvey's apartment on September 18, 1999? Only answer "Yes" if you find that Defendant Ronald Dombroski ordered the landlord to open the door of the apartment.

____ Yes                          ____ No

If you answered "No" please sign and date the verdict form and return to the courtroom. If you answered "Yes" proceed to question 2.

(*Id*. at 315.) Harvey failed to raise objections to the jury instructions or verdict form, and the jury answered "No" to the first question. Harvey now appeals with the assistance of amicus curiae for whom we thank for its service.[1]

## II.

Because Harvey failed to raise an objection to the jury instructions or verdict form, we conduct plain error analysis. Under Rule 51, we "may consider a plain error in the instructions that has not been preserved . . . if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2). We must therefore consider whether the District Court committed an error and, if it did, whether the error affected Harvey's substantial rights.

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction over Harvey's timely appeal under 28 U.S.C. § 1291.

**A.**

To prevail on a § 1983 claim, Harvey had to show, first, that she was deprived of a constitutional right and, second, that the alleged deprivation was "committed by a person acting under color of state law." *Harvey I*, 421 F.3d at 189 (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). The first element was not in dispute. The case turned on whether Harvey could prove that Dombroski acted "under color of state law."[2] 42 U.S.C. § 1983.

Action under color of state law "requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) (internal quotation marks and citations omitted). We have considered state action in the context of private repossessions before. The test is whether the officer maintains neutrality or takes an active role in the repossession resulting in an unconstitutional deprivation. *Id.* at 147. "The mere presence of police at the scene of a private repossession does not, alone, constitute state action." *Id.* An

---

[2] The terms "under color of state law" and "state action" are used interchangeably. Where deprivations of rights under the Fourteenth Amendment are alleged against state officials, these two requirements converge. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935 n.18 (1982); *Abbott v. Latshaw*, 164 F.3d 141, 145 (3d Cir. 1998) ("If . . . conduct satisfies the state action requirement of the Due Process Clause, then it also qualifies as action 'under color of state law' for § 1983 purposes.").

7

officer's presence may be requested to maintain the peace, and the officer appropriately does so by remaining neutral. An officer abandons neutrality once he takes an active role and assists in the repossession.

The relevant inquiry, then, is whether an officer affirmatively aided a repossession such that he can be said to have caused the constitutional deprivation. Such aid may take the form of facilitation, encouragement, direction, compulsion, or other affirmative assistance in the repossession.[3] *See Marcus v. McCollum*, 394 F.3d 813, 819 (10th Cir. 2004). However, liability will only attach when an

---

[3] Relevant circumstances may include whether the officer:

> [1] accompanied the private party onto the scene,
> [2] told the debtor that the seizure was legal,
> [3] ordered the debtor to stop interfering or he would go to jail,
> [4] intervened at more than one step in the repossession process,
> [5] failed to depart before the repossession has been completed,
> [6] stood in close proximity to the creditor, [or]
> [7] unreasonably recognized the documentation of one party over the other[.]

*Price-Cornelison v. Brooks*, 524 F.3d 1103, 1117 (10th Cir. 2008) (citing *Marcus v. McCollum*, 394 F.3d 813, 819 (10th Cir. 2004)).

officer plays a "principal role" in the seizure. *Abbott*, 164 F.3d at 147. In short, an officer may be liable for causing a constitutional deprivation if he "aid[s] the repossessor in such a way that the repossession would not have occurred but for [his] assistance." *Marcus*, 394 F.3d at 819.

The distinction between maintaining neutrality and taking an active role is not to be answered in the abstract. There is no precise formula, and the distinction lies in the particular facts and circumstances of the case. *See Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961) ("Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."). To determine whether a police officer acted under the color of state law, the facts and circumstances of the police officer's role in the private repossession must be examined in their totality. *See Howerton v. Gabica*, 708 F.2d 380, 384 (9th Cir. 1983).

At one point, the District Court in our case instructed the jury correctly:

> The crucial inquiry is whether the police officer was, one, present simply to stand in case there was a breach of the peace or whether the police officer was, two, taking an active role and affirmatively assisted in the repossession.

(App. at 308.) But, as noted, the Court also incorrectly stated that "in order to determine if the . . . plaintiff established her Section 1983 claim, you must answer only one factual question, and that is did the defendant order the landlady to

9

open the door to the apartment." (*Id*. at 302.) Importantly, the verdict form explicitly limited the factual inquiry to a single question: whether "Dombroski ordered the landlord to open the door of the apartment." (*Id*. at 315.)

We find that the jury instructions and verdict form were in error. They precluded a full investigation of the facts and circumstances. Whether there was action under color of state law is dependent upon the role played by Dombroski in the repossession. The state action question must be addressed after considering the totality of the circumstances and cannot be limited to a single factual question.

Applying the totality of the circumstances test, a reasonable jury could have found that Dombroski intervened and aided Olowiany so as to cause the constitutional violation. Dombroski went to the scene of the repossession at Olowiany's behest, implied the search was legal by telling the landlord it was all right to open the door, entered the apartment to observe Olowiany remove items, stayed until repossession was complete, followed immediately behind Olowiany during the seizure, unreasonably recognized Olowiany's documentation – a letter prepared by Olowiany's attorney purporting to list all the items which belonged to Olowiany – even though Harvey was not present to contest the information in the letter, and attempted to mark off the items as Olowiany took them. The verdict form prevented the jury from considering these relevant facts and circumstances.

Dombroski offers three replies. First, he argues that the presence of the plaintiff at the scene of the repossession is a "crucial" factor in finding state action. Because Harvey was

10

not present at the scene of the allegedly unconstitutional search, argues Dombroski, we cannot find state action. We rejected this argument in *Harvey I*, where we did "not read [case law] as embracing a rule that requires the plaintiff's presence in order to find state action." 421 F.3d at 191. For the same reason we reject Dombroski's first argument.

Second, Dombroski argues that the verdict form conformed with the facts of the case and the theory of liability advanced by Harvey. He cites numerous statements by Harvey's counsel in opening and closing statements that Dombroski "ordered" the landlord to open the door. "At no time," argues Dombroski, "did Harvey contend or argue that Chukinas opened the door to the apartment because she was coerced, intimidated, or otherwise[] caused to open the door against her will." (Dombroski Br. at 13.) We find to the contrary. In his closing argument, Harvey's counsel stated:

> We have a police officer who as an authority figure, just as a mother or father is an authority figure. And if the mother or father says to the child, it's okay to open the door . . . the person is going to respond because that is basically an acceptance by the authority figure to go ahead and do it. This is implied if anything else, you go ahead and open the door. He had no authority to allow her to open the door. That was not in his permissive area as a police officer. That amounted to police action on his part.

11

(App. at 289.) Even if Harvey's primary argument was that Dombroski ordered Chukinas to open the door, her counsel also argued and introduced evidence showing that Dombroski's intervention caused Chukinas to open the door. Harvey was entitled to the correct verdict form and jury instructions. *See Hilord Chem. Corp. v. Ricoh Elecs., Inc.*, 875 F.2d 32, 38 (2d Cir. 1989).

Third, Dombroski argues that the instructions and verdict form were in conformity with our opinion in *Harvey I*. In a footnote, we stated,

> It is a much different question whether state action could be found if Chukinas asked Dombroski if she could open the door and he assented (such that there was no official order to open the door). The cases above suggest that Dombroski's mere assent to opening the door, provided that the choice to open the door remained with Chukinas, would not qualify as state action.

*Harvey I*, 421 F.3d at 191 n.6. The mere fact that Dombroski approved Chukinas's opening the door is insufficient to establish state action. Indeed, mere approval is not state action as long as "the choice to open the door remained with Chukinas." *Id*. However, the verdict form prevented the jury from reaching a determination of whether the choice to open the door in fact remained with Chukinas. Considering the totality of the circumstances, the jury may have determined that Dombroski played an active role in the repossession.

12

**B.**

An error constitutes plain error if: "(1) [the error is] fundamental and highly prejudicial or if the instructions are such that the jury is without adequate guidance on a fundamental question and (2) our failure to consider the error would result in a miscarriage of justice." *Alexander v. Riga*, 208 F.3d 419, 426-27 (3d Cir. 2000). A jury instruction, taken as a whole, must inform the jury of the correct legal standard. *Limbach Co. v. Sheet Metal Workers Int'l Ass'n*, 949 F.2d 1241, 1259 n.15 (3d Cir. 1991). When a jury instruction is erroneous, a new trial is warranted unless such error is harmless. *See Advanced Med., Inc. v. Arden Med. Sys., Inc.*, 955 F.2d 188, 199 (3d Cir. 1992). An error is harmless if it is "highly probable" that the error did not contribute to the judgment. *Id.* An erroneous jury instruction may also be considered non-fundamental when, taking the instructions as a whole, the erroneous instruction is a "solitary misstatement of law" buried in an otherwise correct legal explanation. *Ryder v. Westinghouse Corp.*, 128 F.3d 128, 137 (3d Cir. 1997).

The jury instructions and the verdict form contained fundamental, highly prejudicial errors that went beyond minor misstatements of the law. While the instructions included part of the correct legal standard for state action in the context of a repossession, the Court stated that if the jury found that "Dombroski did not direct or order[] the landlady to open the door," then he did not act under the color of state law and the jury must return a verdict for the defendant. (App. 308-09.) This error was reinforced by the verdict form, which forced the outcome of the case to be determined by a

13

single finding of fact: whether Dombroski ordered the landlord to open the door. In *Hurley v. Atlantic City Police Department*, we held that the District Court failed to instruct the jury that punitive damages against the upper management of a company could only be awarded if upper management was involved in the violation. 174 F.3d 95, 122-24 (3d Cir. 1999). We reversed the finding of punitive damages because the jury instructions "failed to provide proper guidance for the jury on a fundamental question." *Id.* at 124; *see also Beardshall v. Minuteman Press Int'l*, 664 F.2d 23, 26 (3d Cir. 1981) (holding that the District Court's failure to instruct the jury as to the proper standard of proof constituted plain error). The District Court in this case did not merely omit an instruction but instructed the jury incorrectly. As a result, the jury conducted an improper finding of fact and reached an unsound conclusion. The jury was unable to exercise its fact-finding function to fully consider the facts and circumstances. If the Court had provided a proper verdict form, the jury may have reached a different result. The jury may have found that Dombroski played an active role in the repossession, even if he did not order the landlord to open Harvey's door. The District Court's error was, therefore, fundamental because it affected the central element in dispute, and it was prejudicial because the jury may have reached a different result.

Second, the failure to consider the District Court's error would result in a miscarriage of justice. The central issue in dispute at the trial was the role played by Officer Dombroski, and Harvey may have lost entirely because of the Court's erroneous verdict form. Though this is a discretionary power that we should exercise sparingly, we

14

believe that finding plain error is appropriate in this case. *See Hurley*, 174 F.3d at 124 (stating that failure to consider a jury-instruction error omitting an element of a claim "would result in a miscarriage of justice"); *Choy v. Bouchelle*, 436 F.2d 319, 325 (3d Cir. 1970) (holding that failure to consider an improper jury instruction would constitute a miscarriage of justice).

## IV.

Because we will vacate the order of the District Court, we need not address the additional claims raised by Harvey in her brief. For the aforementioned reasons, we will vacate and remand this case to the District Court for a new trial.

15